UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE,<br><br>        *Plaintiff*,<br><br>    v.<br><br>JOHN ROE,<br><br>        *Defendant*. | Case No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## PRELIMINARY STATEMENT

1.  Jane Doe, a devout, highly religious person, has spent her life in the service of others and is a successful and dedicated public servant, focused on repairing the world.

2.  Ms. Doe's life and ambitions, however, were thrown into disarray in December 2018, when she had an unwanted sexual encounter with Dr. John Roe that forever changed her life. Earlier that year, Ms. Doe met Dr. Roe—a married medical doctor from Japan—at a professional event.

3.  During a trip to New York City in December 2018, however, it became clear that Dr. Roe wanted more than friendship, despite Ms. Doe's statements to the contrary. On December 1, 2018, he coerced Ms. Doe into receiving oral sex from him—after she repeatedly told him that she did not want anything sexual to happen. Leading up to the encounter, Ms. Doe noticed a lesion on Dr. Roe's lip. Ms. Doe asked him what it was, and he responded by telling her (falsely) not to worry, it was only a clogged follicle, and that he knew what he was talking about because he is a doctor. Defendant said this despite the fact that follicles do not exist on lips, and thus the lesion on his lip could not have been a clogged follicle.

4. Days later, Ms. Doe began to feel tenderness and pain in her genital area. After multiple tests, her worst fear was confirmed: Dr. Roe transmitted herpes, HSV-1, an incurable, lifelong sexually transmitted disease. As a direct consequence of the herpes she contracted, Ms. Doe suffered (and continues to suffer) from vulvodynia—chronic and debilitating vulva pain—and pelvic floor dysfunction.

5. It is now clear that Dr. Roe was aware of his medical condition at the time of their encounter and lied to Ms. Doe about it. In the weeks and months after the incident, Dr. Roe shared test results revealing that he was a longtime carrier of HSV-1 and repeatedly acknowledged that he transmitted this virus to Ms. Doe.

6. The effects of this terrible incident and subsequent diagnoses on Ms. Doe's life have been extreme and devastating, affecting her physical and mental health, ability to start a family, and employment. She has attended hundreds of doctors' appointments, compiled a collection of prescriptions and over-the-counter medications, and spent countless hours trying to track down specialists, insurance coverage, and, most importantly, an understanding of how to move on with her life in a new, altered reality.

7. In light of the foregoing, Ms. Doe has claims against Dr. Roe, including for violation of New York City's Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code § 10-1104, negligent transmission of a contagious or infectious disease, fraudulent misrepresentation and concealment, and constructive fraud.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over Plaintiff's claims because there is diversity between the parties and the amount in controversy is more than $75,000, excluding attorneys' fees and costs.

9. This Court has personal jurisdiction over Dr. Roe because the claims arose out of an incident that occurred in New York City.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as the events giving rise to Plaintiffs' claims arose in this District.

## PARTIES

11. Plaintiff Jane Doe is a resident of New York City, New York.

12. Defendant Dr. John Roe is a resident of Japan, who travels to the United States, including New York. He was present in New York City on December 1, 2018.

## FACTS

### *A.    Dr. Roe Sexually Assaults Ms. Doe.*

13. When Dr. Roe arrived in Manhattan on December 1, 2018, Dr. Roe invited Ms. Doe up to his hotel room with the seemingly innocent purpose of grabbing a coat.

14. Once inside the room, Dr. Roe began to exert pressure on Ms. Doe to have sex with him. Ms. Doe declined his advances, but Dr. Roe coerced her into receiving oral sex from him. After repeatedly expressing her reluctance to engage in oral sex, Ms. Doe stopped actively resisting Dr. Roe's advances.

15. Immediately before Dr. Roe started to perform oral sex, Ms. Doe noticed a lesion on his lip and asked him directly if it was a cold sore. Dr. Roe assured Ms. Doe that it was not a cold sore. He insisted that it was a clogged follicle and reminded her that he knew what he was talking about because he is a doctor.

**B.     Ms. Doe Discovers That Dr. Roe Gave Her Herpes.**

16.     Within days of that encounter on December 1, Ms. Doe started to feel increasing pain in her genital area, as well as fatigue. The exhaustion and pain worsened, and, on December 7, she discovered ulcers on her labia.

17.     On December 10, 2018, Ms. Doe was evaluated by a medical professional to address her increasing pain. During that appointment, Ms. Doe received multiple methods of STI testing, including (1) an immunoglobulin G ("IgG") blood test for HSV-1 and HSV-2, both of which came back negative, and (2) a "culture" test, which is taken via a vulva swab, which came back positive for HSV-1.

18.     The fact that the blood test came back negative but the culture test came back positive is highly significant here: IgG tests identify whether there are antibodies in the blood stream, which usually only exist when HSV has been in the blood stream for four to six weeks after exposure. Culture tests, however, can detect a herpes infection when a person is newly infected, and particularly during the person's initial outbreak. In other words, the lack of antibodies in her blood stream but positive culture test result indicated that the virus had recently been transmitted.

19.     Appointments in the coming weeks and months confirmed this diagnosis, including a blood test in February 2019, which detected antibodies for HSV-1, indicating that it was now in Ms. Doe's bloodstream. Prior to this diagnosis, Ms. Doe had had very few sexual encounters, had never had an STD, and has always been extremely careful with her body.

**C.     Dr. Roe Admits He Is Responsible For Ms. Doe's Herpes Infection.**

20.     Upon receiving the news, Ms. Doe relayed her diagnosis to Dr. Roe. He apologized profusely and told her that he was careless and blamed himself for her diagnosis, readily admitting that he was the cause of Ms. Doe's herpes.

21.     Dr. Roe was also tested shortly thereafter. On December 17, 2018, he texted Ms. Doe his test results, which revealed that he had antibodies for HSV-1 in his bloodstream. That Dr. Roe tested positive with an IgG test just over two weeks after their encounter indicates that, unlike Ms. Doe's diagnosis, HSV-1 antibodies had been in his blood stream for some time: "IgG antibodies take longer to produce but last a lifetime," indicating that a positive IgG test is unlikely where someone has not had an infection for a lengthy period of time.[1]

22.     In January 2019, Dr. Roe was tested for both strains of herpes, HSV-1 and HSV-2. On January 7, he communicated to Ms. Doe that his bloodwork indicated that he had antibodies for both strands of herpes.

23.     Dr. Roe has never denied he is the cause of Ms. Doe's herpes diagnosis.

**D.     *Ms. Doe's Herpes Infections Continue And Cause Several Other Medical Issues.***

24.     In February 2019, a doctor opined that Ms. Doe's continued pain, which had continued after her first outbreak had subsided, was the result of "vulvodynia," for which the doctor prescribed multiple prescriptions. This diagnosis was subsequently confirmed in August 2019 by a vulvodynia expert, and she was also diagnosed with pelvic floor dysfunction.

25.     Doctors recommended a series of medical treatments and medications, some of which she continues to this day and will likely continue for the rest of her life.

26.     Ms. Doe's HSV-1 diagnosis also resulted in a host of other problematic medical issues, including urinary tract infections, yeast infections, significant psychological distress, and side effects from her treatments, including bleeding.

27.     All told, Ms. Doe has attended hundreds of medical appointments, not including dozens of blood tests, visits to the pharmacy, countless calls to insurance, and communications

---

[1] Elizabeth Boskey, PhD, *What Is a Herpes IgG Test?*, Very Well Health (last updated Oct. 14, 2022), https://www.verywellhealth.com/what-does-a-positive-herpes-igg-test-mean-3132937.

with a pelvic support group. She has consulted pain specialists, chronic pain researchers, multiple gynecologists and dermatologists, infectious disease specialists, a sleep specialist, nutritionist, and a rheumatologist.

28. Beyond the physical symptoms, Ms. Doe has suffered severe emotional distress and has consulted numerous mental health and trauma specialists. This emotional distress has manifested in insomnia, nightmares, anxiety, depression, and even suicidal ideations.

### E. *Dr. Roe Shows Continued Indifference To Ms. Doe's Trauma And Suffering.*

29. Since she was diagnosed in December 2018, Ms. Doe understandably reached out to Dr. Roe—a medical doctor and disease expert—for help. Dr. Roe initially expressed concern, took full responsibility for her diagnosis, and expressed his desire to provide long-term support for Ms. Doe. He promised to cover medical expenses, as well as identifying and securing medical providers. But his only two payments to Ms. Doe were minimal, hardly making a dent in her medical expenses, and he once provided a small amount of over-the-counter medicated cream and assistance with two appointments.

30. But Dr. Roe's interest waned, and his messages about his support for Ms. Doe were soon replaced by boasts and musings about his professional pursuits and successes. Over time, their communications became less frequent until Ms. Doe's mental health providers encouraged her to cease all communication.

31. After years of privately enduring the pain that Dr. Roe caused her, in 2021, Ms. Doe decided to take action in order to hold Dr. Roe accountable.

32. Ms. Doe first informed Dr. Roe that she possessed claims against him on October 12, 2021. The parties agreed to toll the statute of limitations period through October 14, 2022.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**New York City's Victims of Gender-Motivated Violence Protection Law
N.Y.C. Admin. Code § 10-1101 *et seq.***

33. Plaintiff repeats and realleges the preceding paragraphs as if set forth here.

34. In New York, a person who is knowingly infected with an infectious venereal disease and has sexual intercourse with another shall be guilty of a misdemeanor pursuant to N.Y. Public Health Law § 2307.

35. On December 1, 2018, Dr. Roe knew that he had an infectious venereal disease and a cold sore on that day. Dr. Roe is a medical doctor. He also had had cold sores on at least one occasion prior to December 1, 2018.

36. After Ms. Doe inquired about a lesion on Dr. Roe's lip, to which he responded it was a clogged follicle, also called folliculitis—a medical impossibility—Dr. Roe performed oral sex on Ms. Doe against her stated wishes.

37. Ms. Doe tested positive for HSV-1, which manifested in genital herpes, on December 10, 2018, and again in February 2019.

### SECOND CAUSE OF ACTION

**Negligent Transmission of a Contagious or Infectious Disease**

38. Plaintiff repeats and realleges the preceding paragraphs as if set forth here.

39. Dr. Roe owed an affirmative legal duty to Ms. Doe because he knew or should have known that he had a communicable disease—herpes.

40. Dr. Roe knew (or at least should have known) that he had herpes when he performed oral sex on Ms. Doe on December 1, 2018. Dr. Roe is a medical doctor. He also had had cold sores on at least one occasion prior to December 1, 2018.

41. Dr. Roe breached his duty to Ms. Doe when he performed oral sex on Ms. Doe on December 1, 2018, with a cold sore on his lip, and did not inform Ms. Doe that he had herpes.

42. As a direct and proximate result of this incident on December 1, 2018, Dr. Roe transmitted herpes (HSV-1) to Ms. Doe. Ms. Doe's herpes infection led to two subsequent, painful diagnoses: vulvodynia and pelvic floor dysfunction. Ms. Doe was never diagnosed with vulvodynia or pelvic floor dysfunction prior to December 1, 2018, and many medical appointments have confirmed these diagnoses.

## THIRD CAUSE OF ACTION

### Fraudulent Misrepresentation

43. Plaintiff repeats and realleges the preceding paragraphs as if set forth here.

44. On December 1, 2018, when asked whether a lesion on his lip was a cold sore, Dr. Roe responded to Ms. Doe that it was a clogged follicle, also called folliculitis.

45. Dr. Roe falsely told Ms. Doe that the lesion on his lip was a clogged follicle in order to perform oral sex on her.

46. Ms. Doe relied on Dr. Roe's representation that the lesion on his lip was a clogged follicle.

47. As a direct and proximate result of this incident on December 1, 2018, Dr. Roe transmitted herpes (HSV-1) to Ms. Doe. Ms. Doe's herpes infection led to two subsequent, painful diagnoses: vulvodynia and pelvic floor dysfunction. Ms. Doe was never diagnosed with vulvodynia or pelvic floor dysfunction prior to December 1, 2018, and many medical appointments have confirmed these diagnoses.

## FOURTH CAUSE OF ACTION

### Fraudulent Concealment

48. Plaintiff repeats and realleges the preceding paragraphs as if set forth here.

49. Dr. Roe owed an affirmative legal duty to Ms. Doe because he knew or should have known that he had a communicable disease—herpes.

50. Dr. Roe knew (or at least should have known) that he had herpes when he engaged in oral sex with Ms. Doe on December 1, 2018. Dr. Roe is a medical doctor. He also had had cold sores on at least one occasion prior to December 1, 2018.

51. Dr. Roe breached his duty to Ms. Doe when he performed oral sex on Ms. Doe on December 1, 2018, with a cold sore on his lip.

52. On December 1, 2018, when asked by Ms. Doe whether a lesion on his lip was a cold sore, Dr. Roe responded that it was a clogged follicle, also called folliculitis.

53. Dr. Roe falsely told Ms. Doe that the lesion on his lip was a clogged follicle in order to perform oral sex on her.

54. Ms. Doe relied on Dr. Roe's representation that the lesion on his lip was a clogged follicle. If she had known it was in fact herpes, as she now knows, she would have even more actively resisted Dr. Roe's efforts to perform oral sex on her.

55. As a direct and proximate result of this incident on December 1, 2018, Dr. Roe transmitted herpes (HSV-1) to Ms. Doe. Ms. Doe's herpes infection led to two subsequent, painful diagnoses: vulvodynia and pelvic floor dysfunction. Ms. Doe was never diagnosed with vulvodynia or pelvic floor dysfunction prior to December 1, 2018, and many medical appointments have confirmed these diagnoses.

## FIFTH CAUSE OF ACTION

### Constructive Fraud

56. Plaintiff repeats and realleges the preceding paragraphs as if set forth here.

57. Dr. Roe owed an affirmative legal duty to Ms. Doe because he knew or should have known that he had a communicable disease—herpes.

58. Dr. Roe breached his duty to Ms. Doe when he performed oral sex on Ms. Doe on December 1, 2018, with a cold sore on his lip.

59. Dr. Roe falsely told Ms. Doe that the lesion on his lip was a clogged follicle in order to perform oral sex on her.

60. Ms. Doe relied on Dr. Roe's representation that the lesion on his lip was a clogged follicle. If she had known it was in fact herpes, as she now knows, she would have even more actively resisted Dr. Roe's efforts to perform oral sex on her.

61. As a direct and proximate result of this incident on December 1, 2018, Dr. Roe transmitted herpes (HSV-1) to Ms. Doe. Ms. Doe's herpes infection led to two subsequent, painful diagnoses: vulvodynia and pelvic floor dysfunction. Ms. Doe was never diagnosed with vulvodynia or pelvic floor dysfunction prior to December 1, 2018, and many medical appointments have confirmed these diagnoses.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court grant the following relief:

A. Compensatory damages in an amount to be determined at trial;

B. Punitive damages in an amount to be determined at trial;

C. Reasonable fees, costs, and expenses, including attorneys' fees;

D. Pre- and post- judgement interest to the fullest extent permitted by law; and

E. Any additional relief the Court deems just and proper.

| | |
|---|---|
| Dated:  October 14, 2022 | Respectfully submitted, |

*[signature]*

Roberta A. Kaplan
Julie E. Fink
Molly K. Webster
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 937-3734
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
mwebster@kaplanhecker.com

*Counsel for Plaintiff Jane Doe*