UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

               *Plaintiff*,

   v.

JOHN ROE,

              *Defendant*.

Case No. 1:22-cv-08779-PGG

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR LEAVE TO PROCEED UNDER A PSEUDONYM
AND FOR A PROTECTIVE ORDER**

Roberta A. Kaplan
Julie E. Fink
Molly K. Webster
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 937-3734

*Counsel for Plaintiff Jane Doe*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

STATEMENT OF FACTS ................................................................................................................. 2

ARGUMENT ..................................................................................................................................... 4

    A.  The Risks to Plaintiff Favor Allowing Her to Proceed Under a Pseudonym ...................... 6

    B.  Allowing Plaintiff to Proceed Pseudonymously Will Not Prejudice Defendant ................. 9

    C.  Plaintiff Has Diligently Worked to Keep Her Identity Confidential and There Is No
Alternative Mechanism for Protecting Her Identity ........................................................... 11

    D.  Public Policy and the Public Interest Favor Protecting Plaintiff's Privacy ....................... 12

CONCLUSION ............................................................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Acevedo v. Capra*,
  No. 20-CV-7361, 2021 WL 1725735 (S.D.N.Y. Mar. 8, 2021) .................................................. 7

*Doe v. Bloomberg L.P.*,
  200 A.D.3d 410 (1st Dep't 2021) ............................................................................................. 8

*Doe v. Blue Cross & Blue Shield of R.I.*,
  794 F. Supp. 72 (D.R.I. 1992) ................................................................................................... 6

*Doe v. Blue Cross & Blue Shield United of Wis.*,
  112 F.3d 869 (7th Cir. 1997) ..................................................................................................... 6

*Doe v. Boulder Valley Sch. Dist. No. RE-2*,
  No. 11-CV-2107, 2011 WL 3820781 (D. Colo. Aug. 30, 2011) ............................................. 13

*Doe v. Cabrera*,
  307 F.R.D. 1 (D.D.C. 2014) ....................................................................................................... 8

*Doe v. City of New York*,
  No. 15-CV-117, 2016 U.S. Dist. LEXIS 16344 (S.D.N.Y. Feb. 4, 2016) ................................ 11

*Doe v. Cuomo*,
  No. 10-CV-1534, 2013 WL 1213174 (N.D.N.Y. Feb. 25, 2013) .............................................. 5

*Doe v. De Amigos, LLC*,
  No. 11-CV-1755, 2012 WL 13047579 (D.D.C. Apr. 30, 2012) ................................................ 7

*Doe v. Delta Airlines, Inc.*,
  310 F.R.D. 222 (S.D.N.Y. 2015) ............................................................................................. 11

*Doe v. Doe*,
  No. 20-CV-5329, 2020 WL 6900002 (E.D.N.Y. Nov. 24, 2020) ................................ 7, 8, 9, 11

*Doe v. Evans*,
  202 F.R.D. 173 (E.D. Pa. 2001) .............................................................................................. 12

*Doe v. Fedcap. Rehab. Servs., Inc.*,
  No. 17-CV-8220, 2018 WL 2021588 (S.D.N.Y. Apr. 27, 2018) ............................................. 11

*Doe v. Inst. For Family Health*,
  No. 20-CV-5155, 2020 U.S. Dist. LEXIS 125293 (S.D.N.Y. July 7, 2020) ............................. 7

*Doe v. Mozer*,
   No. 16-CV-210, 2016 WL 3536857 (D. Nev. June 27, 2016) ................................................... 7

*Doe v. Rutgers*,
   No. 18-CV-12952, 2019 WL 1967021 (D.N.J. Apr. 30, 2019) ............................................... 12

*Doe v. Shakur*,
   164 F.R.D. 359 (S.D.N.Y. 1996) .............................................................................................. 8

*Doe v. Skyline Automobiles Inc.*,
   375 F. Supp. 3d 401 (S.D.N.Y. 2019) ....................................................................................... 6

*Doe v. Smith*,
   105 F. Supp. 2d 40 (E.D.N.Y. 1999) ...................................................................................... 10

*Doe v. St. Vincent's Servs., Inc.*,
   No. 20-CV-6215, 2021 WL 7909266 (E.D.N.Y. Sept. 29, 2021) ............................................ 7

*Doe v. Trustees of Dartmouth Coll.*,
   No. 18-CV-040, 2018 WL 2048385 (D.N.H. May 2, 2018) ..................................................... 6

*Doe v. United Servs. Life Ins. Co.*,
   123 F.R.D. 437 (S.D.N.Y. 1988) ............................................................................................ 10

*Doe v. Univ. of Conn.*,
   No. 09-CV-1071, 2013 WL 4504299 (D. Conn. Aug. 22, 2013) ............................................. 6

*Doe No. 2 v. Kolko*,
   242 F.R.D. 193 (E.D.N.Y. 2006) .............................................................................. 6, 8, 10, 12

*Does I Thru XXIII v. Advanced Textile Corp.*,
   214 F.3d 1058 (9th Cir. 2000) .................................................................................................. 4

*Does v. Hochul*,
   No. 21-CV-5067, 2022 WL 836990 (E.D.N.Y. Mar. 18, 2022) ........................................ 9, 13

*E.W.* v. *N.Y. Blood Ctr.*,
   213 F.R.D. 108 (E.D.N.Y. 2009) ........................................................................................ 9, 10

*EEOC v. Spoa, LLC*,
   No. 13-CV-1615, 2013 WL 5634337 (D. Md. Oct. 15, 2013) ................................................. 8

*Hartford Courant Co. v. Pellegrino*,
   380 F.3d 83 (2d Cir. 2004) ....................................................................................................... 9

*Lugosch v. Pyramid Co. of Onondaga*,
   435 F.3d 110 (2d Cir. 2006) ..................................................................................................... 9

*Rapp v. Fowler*,
   537 F. Supp. 3d 521 (S.D.N.Y. 2021) .......................................................................................... 6

*Robinson v. Clark*,
   No. 15-CV-8434, 2017 WL 775813 (S.D.N.Y. Feb. 27, 2017) .................................................. 9

*Roe v. Does 1-11*,
   No. 20-CV-3788, 2020 WL 6152174 (E.D.N.Y. Oct. 14, 2020) ................................................ 6

*Sealed Plaintiff v. Sealed Defendant*,
   537 F.3d 185 (2d Cir. 2008) ............................................................................................. *passim*

**Statutes**

N.Y. Civil Rights Law § 50-b (McKinney 2021) ......................................................................... 12

**Other Authorities**

Beverly Engel, L.M.F.T., "Why Don't Victims of Sexual Harassment Come Forward Sooner?",
   Psychology Today (Nov. 16, 2017). ......................................................................................... 12

Nat'l Inst. of Justice, U.S. Dep't of Justice, *Reporting of Sexual Violence Incidents*
   (last updated Oct. 25, 2010). ..................................................................................................... 13

Transcript, ECF. No. 59, *Doe v. Trump Corp.*, No. 18-CV-9936 (S.D.N.Y. Dec. 20, 2018) ...... 10

Plaintiff Jane Doe, by her undersigned attorneys, respectfully submits this memorandum of law in support of her motion for leave to proceed under a pseudonym and for a protective order, until such time as the Court may order her name to be disclosed.[1]

## PRELIMINARY STATEMENT

In the months after Plaintiff, an unmarried and deeply religious person, met Defendant John Roe at a professional event in 2018, she made it clear that she did not want to become romantically involved. But Defendant ignored that wish, pursuing Plaintiff over the course of several months. When he had the opportunity to invite her into his hotel room on the pretext of grabbing a coat on a cold day, he took it—and pressured her into permitting him to perform oral sex on Plaintiff. This unwanted sexual encounter left Plaintiff devastated by the herpes simplex virus, a sexually transmitted disease, which Defendant transmitted to her after lying to her that he did not have it.

It is extremely difficult for anyone to reveal that they have been a victim of an unwanted sexual encounter, much less one that resulted in the transmission of a sexually transmitted disease. Plaintiff is no exception. She has largely kept Defendant's terrible actions that day, her subsequent herpes diagnosis, and the devastation it has caused to her physical and mental health a secret. In seeking to proceed under a pseudonym, Plaintiff simply wants to keep this extremely personal and sensitive matter private, while holding Defendant accountable for his unlawful conduct. She also wants to protect against further harm to her mental health; in the aftermath of Defendant's illegal behavior, Plaintiff has suffered anxiety and severe depression, including suicidal ideations. She has already suffered professional harm not only due to her painful symptoms, but also because of

---

[1] Plaintiff understands that at some point issues may arise regarding how to proceed with discovery of her claim. At that time, counsel for Plaintiff intends to meet and confer about these issues with counsel for Defendant and will bring disputes (if any) to the Court for resolution as appropriate. In any event, Defendant is aware of Plaintiff's identity and likely sources of discovery and witnesses.

the medical leave and appointments she has had to attend as a result of her herpes and related diagnoses. These deleterious effects that Plaintiff has already suffered would only, of course, be exacerbated if her name is exposed.

Moreover, any concerns about the public interest and matters of fairness to counsel are not present here. There is no public interest in revealing Plaintiff's identity; to the contrary, allowing Plaintiff to proceed pseudonymously fosters the public interest in having victims come forward when sensitive and embarrassing torts have been committed. The Court can also establish procedures by which Defendant will have the information necessary to defend the case, which will be particularly straightforward here because Defendant already knows Plaintiff's identity, and because Plaintiff voluntarily agrees that Defendant can remain pseudonymous, there can be no assertion of unfair prejudice to Defendant.

Accordingly, and for all the reasons set forth below, Plaintiff Jane Doe respectfully requests that this Court permit her to proceed in this case under a pseudonym and enter a protective order protecting her identity from public disclosure.

## STATEMENT OF FACTS

Plaintiff is a dedicated public servant. She is also a deeply religious and observant person who has devoted her entire career to helping repair the world. Plaintiff met Defendant at a professional event in 2018. They communicated with each other frequently over a period of months, with Defendant's messages becoming increasingly romantic. Although Plaintiff engaged in communications with Defendant, she made it clear that, because of her religious beliefs, she would never become physically involved with him.

In December 2018, Defendant came to New York City, and Plaintiff agreed to meet him in his hotel lobby. Defendant arrived in the hotel lobby without a jacket, which he used as an excuse

to invite Plaintiff back to his hotel room. There, he tried to pressure Plaintiff to have sex with him. Although Plaintiff was steadfast in her refusal, she eventually reached a point where she could no longer resist, and Defendant coerced her into receiving oral sex. That moment ended up changing Plaintiff's life forever.

During their encounter, Plaintiff noticed a cold sore on Defendant's lip, which she explicitly asked him about. He dismissed her question, telling her that he was a doctor and the cold sore was merely a "clogged follicle." However, it turns out that that was a lie—the lesion on Defendant's lip was the result of the herpes simplex virus, HSV-1, which he transmitted to Plaintiff and which manifested as genital herpes—a diagnosis that has devastated Plaintiff, leaving her physically debilitated and in extreme mental distress. Prior to this encounter, Plaintiff had had *very* few sexual encounters, has been extremely careful with her body, and had never had a sexually transmitted disease. Not surprisingly, the subsequent medical testing confirmed that it was Defendant who had transmitted it to her.

Plaintiff's first herpes infection lasted several weeks, during which she had lesions and was in intense pain. That, however, was not the end of Plaintiff's suffering. Since then, she has experienced repeat outbreaks and has had persistent severe pain that makes it difficult, if not impossible, to go about her daily activities. In 2019, she was diagnosed with vulvodynia, a chronic condition with symptoms that include a burning sensation, irritation, and rawness, as well as pelvic floor dysfunction. These conditions can result from a herpes infection, as happened here. In the years following her diagnoses, Plaintiff has attended hundreds of medical appointments and consulted with many doctors and medical professionals. She has also been prescribed numerous medications, including antivirals, nerve blockers, and antibiotics.

Not surprisingly given the severe physical pain, Plaintiff also suffers from extreme psychological and emotional distress because of her diagnoses. She now suffers from anxiety, insomnia, and depression, which includes suicidal ideations. She has also experienced the loss of career opportunities, particularly because her diagnoses and frequent medical appointments have caused her to miss work and take a medical leave.

Plaintiff has never publicly disclosed Defendant's assault or her medical history. She has revealed her story only to her closest of friends and family and doing so even then was deeply distressing, often triggering further emotional distress. She does not want her community, extended family members, and future employers to know about Defendant's illegal actions and Plaintiff's diagnoses, particularly given the stigma that sexually transmitted diseases typically carry. Public disclosure of these facts would only enhance Plaintiff's mental and emotional distress, damage her personal relationships, and hinder her career prospects.

## ARGUMENT

Plaintiff's traumatizing experience contracting a sexually transmitted disease during an unwanted sexual encounter, and the additional mental harm she would suffer if her identity were disclosed in this litigation, entitles her to proceed pseudonymously. In deciding whether a plaintiff may be allowed to maintain an action under a pseudonym, courts in this Circuit balance the plaintiff's interest in anonymity against the public interest in disclosure and any prejudice to the defendant. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008); *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068-69 (9th Cir. 2000). This is a "factor-driven balancing inquiry [that] requires a district court to exercise its discretion in the course of weighing competing interests." *Sealed Plaintiff*, 537 F.3d at 190.

The Second Circuit has set forth a list of the following ten non-exhaustive factors that courts should consider in determining whether to permit a plaintiff to proceed pseudonymously:

4

(1) "whether the litigation involves matters that are highly sensitive and of a personal nature;

(2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;

(3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;

(4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of the plaintiff's age;

(5) whether the suit is challenging the actions of the government or that of private parties;

(6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

(7) whether the plaintiff's identity has thus far been kept confidential;

(8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose [her] identity;

(9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

(10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff."

*Id.* (citations and internal quotation marks omitted); *see also Doe v. Cuomo*, No. 10-CV-1534, 2013 WL 1213174, at *5 (N.D.N.Y. Feb. 25, 2013) (same). Courts are "not required to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Sealed Plaintiff*, 537 F.3d at 191 n.4.

Here, all the factors relevant to this case strongly weigh in favor of, and none weigh against, granting Plaintiff's motion to proceed with this case using a pseudonym.

### A. The Risks to Plaintiff Favor Allowing Her to Proceed Under a Pseudonym

The first four *Sealed Plaintiff* factors concern the plaintiff's privacy and the potential harm to the plaintiff if her identity is disclosed. 537 F.3d at 190. While the second and fourth factors do not apply to this litigation, the first and third factors counsel strongly in favor of allowing Plaintiff to proceed pseudonymously.

With respect to the first factor, it has long been the general practice of the federal courts that "fictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997) (Posner, J.). As a result, sexual matters like the one involved here are presumptively considered to be "highly sensitive." *Roe v. Does 1-11*, No. 20-CV-3788, 2020 WL 6152174, at *2 (E.D.N.Y. Oct. 14, 2020). As one court has observed, "'one's sexual practices are among the most intimate parts of one's life,' and the public disclosures of such information may subject one to embarrassment or ridicule." *Doe v. Trustees of Dartmouth Coll.*, No. 18-CV-040, 2018 WL 2048385, at *5-6 (D.N.H. May 2, 2018) (quoting *Doe v. Blue Cross & Blue Shield of R.I.*, 794 F. Supp. 72, 74 (D.R.I. 1992)). Courts have thus recognized that "sexual assault victims are a paradigmatic example of those entitled to a grant of anonymity." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006); *see also Rapp v. Fowler*, 537 F. Supp. 3d 521, 528 (S.D.N.Y. 2021) ("Allegations of sexual assault are paradigmatic examples of highly sensitive and personal claims and thus favor a plaintiff's use of a pseudonym." (citation omitted)); *Doe v. Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 405 (S.D.N.Y. 2019) (finding allegations of sexual assault and ongoing sexual harassment were "highly sensitive and of an extremely personal nature"); *Doe v. Univ. of Conn.*, No. 09-CV-1071, 2013 WL 4504299, at *28 (D. Conn. Aug. 22, 2013) (allowing plaintiff to proceed pseudonymously where complaint involved allegations of sexual harassment, stating "it is difficult to conceive of allegations that can be more sensitive or

6

personal"). This holds true for the torts associated with transmitting a sexually transmitted disease: courts have routinely permitted a plaintiff to proceed pseudonymously because her "sexual health and details of [] transmission of a sexually transmitted disease is a highly sensitive matter." *Doe v. Mozer*, No. 16-CV-210, 2016 WL 3536857, at *1 (D. Nev. June 27, 2016); *see also Doe v. Doe*, No. 20-CV-5329, 2020 WL 6900002, at *2 (E.D.N.Y. Nov. 24, 2020) (allowing plaintiff to proceed pseudonymously because the complaint disclosed that plaintiff "contracted sexually-transmitted diseases as a result of defendant's alleged tortious conduct"); *Doe v. Inst. For Family Health*, No. 20-CV-5155, 2020 U.S. Dist. LEXIS 125293, at *5 (S.D.N.Y. July 7, 2020) ("[F]ederal and state NY courts have granted people living with . . . sexually and blood-transmitted diseases to proceed pseudonymously.") (collecting cases); *Doe v. De Amigos, LLC*, No. 11-CV-1755, 2012 WL 13047579, at *2 (D.D.C. Apr. 30, 2012) (plaintiff allowed to proceed under pseudonym because publicity about her "genital anatomy, hospital examinations, testing, and medications for various sexually transmitted diseases, and consequent psychiatric treatment" . . . could reach "friends, potential coworkers, and future partners by way of the internet," and thus "exacerbate the psychological harm that she has already experienced"). In addition, and in accordance with these principles, courts have often held that cases involving the negligent transmission of HIV merits granting a motion to proceed pseudonymously. *See, e.g.*, *Acevedo v. Capra*, No. 20-CV-7361, 2021 WL 1725735, at *2 (S.D.N.Y. Mar. 8, 2021) (granting motion where petitioners were diagnosed with HIV); *Doe v. St. Vincent's Servs., Inc.*, No. 20-CV-6215, 2021 WL 7909266, at *2-3 (E.D.N.Y. Sept. 29, 2021) (same).

As to the third *Sealed Plaintiff* factor—the harm threatened by disclosure—identifying Plaintiff here will only exacerbate the trauma and grief that she has already experienced because of what happened to her due to Defendant's conduct. It is no exaggeration to say that Plaintiff's

world was turned upside down by Defendant's actions and her subsequent herpes diagnosis; the unwanted nature of the encounter, and the shock and aftermath of the diagnosis, left Plaintiff in extreme mental distress. Plaintiff now suffers from anxiety, depression, and insomnia. Her depression has been so severe that it has led her to have suicidal thoughts. Plaintiff is undergoing counseling to cope with the psychological effects of Defendant's illegal actions. Public disclosure of her identity—exposing this painful experience to Plaintiff's friends, community, and future employers—would not only reverse the slow progress that Plaintiff has made, but further exacerbate her mental anguish. Indeed, courts have recognized that forcing a plaintiff who has been the victim of sexual abuse to disclose her identity would result in not only further embarrassment, but could also lead to victimization and loss of dignity, doing more harm than good. *See Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996); *Doe v. Cabrera*, 307 F.R.D. 1, 5 & n.6 (D.D.C. 2014); *EEOC v. Spoa, LLC*, No. 13-CV-1615, 2013 WL 5634337, at *3 (D. Md. Oct. 15, 2013) ("It is not simply that Doe may face embarrassment from . . . widespread disclosure . . . but rather she may face psychological harm from having this sensitive experience made permanently available to anyone with Internet access.").

Plaintiff's psychological harm from disclosure of her identity is confirmed in a letter attached hereto from her therapist. *See Doe*, 2020 WL 6900002, at *2 (allowing plaintiff to proceed pseudonymously where she "provided a letter from a therapist whose 'clinical opinion' is that the plaintiff 'would be mentally and emotionally impacted if . . . her information is made public in this case"); *Kolko*, 242 F.R.D. at 196 (citing declaration from psychologist); *Doe v. Bloomberg L.P.*, 200 A.D.3d 410, 410 (1st Dep't 2021) (finding affidavits from plaintiff's psychologist and psychiatrist to be "compelling"). According to Plaintiff's therapist, Plaintiff has "worked hard and long to . . . achieve some emotional stability and reestablish equilibrium," and "a public case could

jeopardize that status . . . and cause unnecessary and unfair damage to her personal and professional reputations, which are at present unblemished." Ex. A.[2]

In addition, Plaintiff's need for privacy is buttressed by her strongly held religious beliefs. Plaintiffs have a strong interest in maintaining the privacy of their "personal medical decisions . . . as well as sincerely held, 'quintessentially private' religious beliefs.'" *Does v. Hochul*, No. 21-CV-5067, 2022 WL 836990, at *4 (E.D.N.Y. Mar. 18, 2022). Plaintiff is a very religious person who lives her life according to her religious beliefs. Publicly disclosing the nature of her medical condition and the unwanted sexual encounter would jeopardize her ability to remain connected to her faith life and her spiritual community, particularly given the stigma among certain religious communities associated with premarital sexual relations, having those relations with a married partner, and contracting a sexually transmitted disease.

### B. Allowing Plaintiff to Proceed Pseudonymously Will Not Prejudice Defendant

With respect to *Sealed Plaintiff*'s sixth factor, a court should consider the difficulties in conducting discovery and the fundamental fairness of proceeding in such a manner. *See E.W.* v. *N.Y. Blood Ctr.*, 213 F.R.D. 108, 112 (E.D.N.Y. 2009). These factors also counsel in favor of allowing Plaintiff to proceed pseudonymously here.

As an initial matter, Plaintiff does not oppose Defendant proceeding anonymously in this litigation as well so as to mitigate against any damage he might incur to his reputation as a result of Plaintiff's claims. *See Doe*, 2020 WL 6900002, at *4 (granting defendant, like plaintiff, the right

---

[2] We respectfully request that the Court order this Exhibit A be filed under seal pursuant to *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). The Second Circuit recognizes "[t]he common law right of public access to judicial documents" and "the public and the press['s] . . . 'qualified First Amendment right to . . . access certain judicial documents.'" *Id.* at 119-20 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). Here, Exhibit A is a judicial document. *See id.* at 119. And courts in this Circuit routinely file under seal litigants' sensitive medical records, like Exhibit A—a letter from Ms. Doe's medical provider. *See, e.g.*, *Robinson v. Clark*, No. 15-CV-8434, 2017 WL 775813, at *10 (S.D.N.Y. Feb. 27, 2017) (filing submission under seal where documents contained "medical information not appropriate for filing on a public docket").

to proceed pseudonymously); *Doe v. Smith*, 105 F. Supp. 2d 40, 44 (E.D.N.Y. 1999) (concluding that defendant cannot claim prejudice on the basis on reputational harm because "[P]laintiff's offer to forego opposition to defendant also proceeding under a pseudonym substantially limits defendant's need to defend himself publicly from public charges").

Permitting Plaintiff to proceed under a pseudonym will not inhibit Defendant from conducting discovery and defending this case. Where, as here, a defendant's counsel is already aware of the plaintiff's identity, there is no "prejudice to [defendant's] ability to conduct discovery or try the matter if plaintiff were to proceed under a pseudonym." *E.W.*, 213 F.R.D. at 112. "Other than the need to make redactions and take measures not to disclose plaintiff's identity, defendant[] will not be hampered or inconvenienced merely by plaintiff's anonymity in court papers." *Kolko*, 242 F.R.D. at 198; *see also Doe v. United Servs. Life Ins. Co.*, 123 F.R.D. 437, 439 (S.D.N.Y. 1988) (holding anonymity allowed because of sensitive privacy concerns and no unfairness to defendant who was aware of claimant's true identity). Here, Defendant and his counsel already know Plaintiff and can easily determine potential witnesses and sources of discovery. As in other cases in which courts have permitted plaintiffs to proceed under a protective pseudonym, the requested order "may not and will not hinder defendant's ability to pursue his legal defense in any way." *Smith*, 105 F. Supp. 2d at 45 (no prejudice to defendant where plaintiff's anonymity did not interfere with ability to take depositions, obtain documents, or limit defendant's trial rights or public's access rights); *see also* Transcript, ECF No. 59 at 25:9-29:8, *Doe v. Trump Corp.*, No. 18-CV-9936 (S.D.N.Y. Dec. 20, 2018) (granting motion to proceed pseudonymously where disclosing plaintiffs' identities could lead to their future harm, public interest in disclosing

identities did not outweigh potential harm to plaintiffs, and there was minimal prejudice to defendants at early stage of litigation).[3]

### C. Plaintiff Has Diligently Worked to Keep Her Identity Confidential and There Is No Alternative Mechanism for Protecting Her Identity

With respect to *Sealed Plaintiff* factor seven, Plaintiff has worked diligently to safeguard her privacy. She has never spoken to the press or publicly identified herself in any way associated with her allegations, nor has she disclosed her diagnoses even to close colleagues or the parties' mutual friends. In other words, this is not a situation where Plaintiff has sought some perceived litigation advantage by broadcasting her identity in public while attempting to shield it in court. *Cf. Doe v. Fedcap. Rehab. Servs., Inc.*, No. 17-CV-8220, 2018 WL 2021588, at *2-3 (S.D.N.Y. Apr. 27, 2018) (vacating grant of pseudonymity after plaintiff voluntarily participated in major news story using their real name). Plaintiff's efforts to keep her allegations and diagnoses confidential are fully consistent with her desire to proceed pseudonymously. *See Doe*, 2020 WL 6900002, at *2 (finding that the fact that plaintiff "has remained anonymous and has not made her allegations public prior to commencing this action" weighed in favor of proceeding pseudonymously).

---

[3] Courts often grant initial leave to file a complaint pseudonymously while reserving the right to order disclosure of a plaintiff's identity at a later stage of litigation, suggesting that the standard for making the requisite showing is lower at the pleadings stage than later in the course of litigation. *See, e.g.*, *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 223 (S.D.N.Y. 2015) (denying motion to proceed pseudonymously at trial after having previously "granted Doe's *ex parte* motion for leave to file her Complaint under a pseudonym"), *aff'd*, 672 F. App'x 48 (2d Cir. 2016) (summary order); *cf. Doe v. City of New York*, No. 15-CV-117, 2016 U.S. Dist. LEXIS 16344, at *12-13 (S.D.N.Y. Feb. 4, 2016) ("Plaintiff's motion to proceed anonymously is GRANTED at this time and the Court authorizes Plaintiff to file the proposed Amended Complaint. However, Defendants may move to revisit the issue of Plaintiff's anonymity before the case proceeds to trial.").

### D. Public Policy and the Public Interest Favor Protecting Plaintiff's Privacy

As to the eighth and tenth *Sealed Plaintiff* factors,[4] there is no public interest to be served by revealing Plaintiff's identity. To the contrary, the public interest would best be served by permitting Plaintiff to seek justice under a protective pseudonym. Indeed, courts have held that "[t]here is a recognized public interest in ensuring that victims of sexual assault can vindicate their claims and that the fear of public humiliation does not discourage these plaintiffs." *Doe v. Rutgers*, No. 18-CV-12952, 2019 WL 1967021, at *3 (D.N.J. Apr. 30, 2019). New York has a strong public policy of protecting the privacy interests of victims of sexual abuse, as demonstrated by Section 50-b of the Civil Rights Law, which protects sexual abuse survivors from undesired identification in a wide range of public administrative contexts, including certain court proceedings. *See* N.Y. Civil Rights Law § 50-b (McKinney 2021) (shielding sexual abuse victims from identification in, among other things, any "police report, court file, or other document").

Moreover, in addition to the public's general interest in protecting the wellbeing of victims, "the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." *Kolko*, 242 F.R.D. at 195-96; *see also Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (similar). In fact, studies have shown that women who have been sexually assaulted hesitate to report what happened to them precisely because of the issues raised by this Motion and this case—shame, embarrassment, fear their stories will not be believed, and fear they may be punished for coming forward. *See, e.g.*, Beverly Engel, L.M.F.T., *Why Don't Victims of Sexual Harassment Come Forward Sooner?*, Psychology Today (Nov. 16, 2017), https://www.psychologytoday.com/us/blog/the-compassion-

---

[4] As to the ninth factor, "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities," because this matter is primarily a tort matter between two individuals, the public does not have any interest in knowing the litigants' identities.

chronicles/201711/why-dont-victims-sexual-harassment-come-forward-sooner; Nat'l Inst. of Justice, U.S. Dep't of Justice, *Reporting of Sexual Violence Incidents* (last updated Oct. 25, 2010), https://nij.ojp.gov/topics/articles/reporting-sexual-violence-incidents. And with the ubiquitous nature of the Internet, "electronic case filing allows anyone with an internet connection to access public pleadings, which means that revealing [Plaintiff's] name[] could expose [her] to . . . persons seeking to exploit [her] perceived vulnerability." *Doe v. Boulder Valley Sch. Dist. No. RE-2*, No. 11-CV-2107, 2011 WL 3820781, at *3 (D. Colo. Aug. 30, 2011). Moreover, there is a strong public interest in ensuring that Plaintiff is permitted to freely practice her religion; if Plaintiff were required to reveal her identity, she would be further challenged in practicing her religion and holding her abuser accountable. *See Hochul*, 2022 WL 836990, at *5-6.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion and allow her to file her complaint using a pseudonym and grant a protective order barring Defendant from publicly disclosing her name.

Dated: October 17, 2022

Respectfully submitted,

Roberta A. Kaplan
Julie E. Fink
Molly K. Webster
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 937-3734
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
mwebster@kaplanhecker.com

*Counsel for Plaintiff Jane Doe*

13